UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Samsam Abas Hassan,<br><br>    Plaintiff,<br><br>v.<br><br>Marc C. Dillard, *Deputy Chief of Mission, U.S. Embassy in Kenya*; Antony Blinken, *Secretary of the U.S. Department of State*;<br><br>    Defendants. | No. 24-cv-1351 (KMM/LIB)<br><br>**ORDER** |

Plaintiff Samsam Abas Hassan is a United States citizen who brings this suit to compel Defendants Marc C. Dillard and Antony Blinken to take action on and adjudicate her fiancé's visa application so that the couple can be united in America. This matter is before the Court on Defendants' motion to dismiss Ms. Hassan's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). As discussed below, the motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff Samsam Abas Hassan is a U.S. citizen who resides in Saint Cloud, MN. Compl. ¶ 10. She is engaged to be married to Abdikani Bashier Hussein. *Id.* ¶ 2. Ms. Hassan has brought this action against Marc Dillard, the Deputy Chief of Mission at the U.S. Embassy in Kenya, and Secretary of State Antony Blinken. *Id.* ¶ 11. Ms. Hassan

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the following background is drawn from the Plaintiff's complaint. For purposes of this Order, the Court treats the facts alleged in the complaint as true.

alleges that Defendants have unreasonably delayed adjudication of her fiancé's properly-filed I-129F visa application. *Id.* ¶ 1.

Ms. Hassan hoped Mr. Hussein could join her in the United States. *Id.* ¶ 18. Ms. Hassan filed a visa application with the United States Citizenship and Immigration Services ("USCIS") in July 2021 on Mr. Hussein's behalf. *Id.* ¶¶ 2, 16. USCIS initially approved the petition in June 2022, but it remains pending. *Id.* ¶¶ 3, 17.

Mr. Hussein had a consular interview in March 2023 at the U.S. Embassy in Kenya. *Id.* ¶ 19. At the end of the interview, Mr. Hussein was not issued a visa; instead, his application was "refused" for further "administrative processing." *Id.* ¶¶ 20–21. Since Mr. Hussein's interview, both he and Ms. Hassan have inquired as to the status of the visa application, but they have received no meaningful response. *Id.* ¶ 22. They are unaware of what steps, if any, Defendants are taking to complete adjudication of Mr. Hussein's visa application. *Id.*

Ms. Hassan alleges that she and Mr. Hassan have been separated since 2021, causing them both personal, financial, and emotional hardship. *Id.* ¶ 6. In the past, Ms. Hassan's two-year-old son lived with her in the United States, but she has since decided to have her son live with his father in Nairobi due to difficulties she has encountered paying for monthly costs of childcare. *Id.* ¶ 7. Ms. Hassan is also pregnant again, and she has experienced significant health complications with the pregnancy. *Id.* She would like to have her fiancé with her in America when the newborn arrives. *Id.* Ms. Hassan also had to abandon her pursuit of a master's degree in political science and had to delay opening an ethnic grocery store in the United States because of the stress

2

caused by the separation from her family and the delay in adjudication of the visa application. *Id.* ¶ 8. The family has incurred financial hardship because of the delay, including debt to Ms. Hassan's sister for the cost Hassan incurred in travelling to Kenya to visit her family. In addition, the couple has had to postpone their wedding. *Id.* ¶ 9.

Ms. Hussein asserts three causes of action. First, Ms. Hussein asserts, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), that the State Department has unreasonably delayed adjudication of the visa application. *Id.* ¶¶ 23–27. Second, she seeks relief under the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651, to compel Defendants to perform their nondiscretionary duty to finally adjudicate the visa petition. *Id.* ¶¶ 28–34. The Court will refer to these APA and mandamus claims collectively as the "unreasonable-delay claims." Finally, Plaintiff argues that Defendants' conduct violates her substantive and procedural due process rights under the Fifth Amendment to the U.S. Constitution. *Id.* ¶¶ 35–39.

## DISCUSSION

In their motion to dismiss, Defendants argue that the complaint fails to state a claim on which relief can be granted. Defendants argue that (1) Ms. Hassan's due process claim fails under recent Supreme Court precedent; (2) the unreasonable-delay claim fails because Defendants do not owe Ms. Hassan a nondiscretionary duty; (3) the unreasonable-delay claim is barred by the doctrine of consular nonreviewability; and (4) the unreasonable-delay claim is implausible.

I. **Legal Standard**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910 (8th Cir. 2016). The court can only dismiss a complaint under this Rule where it determines that the plaintiff fails to allege a plausible claim. *Id.* A claim is plausible if the facts alleged permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The court may consider only the allegations in the complaint, "materials that are necessarily embraced by the pleadings[,] and exhibits attached to the complaint." *Id.* at 911 (quotation omitted).

II. **Analysis**

  A. **Due Process Claim**

In her Third Cause of Action, Ms. Hassan alleges that Defendants' delay in adjudicating her fiancé's visa application has deprived Ms. Hassan of her Fifth Amendment rights of substantive and procedural due process. Compl. ¶¶ 35–39; Pl.'s Opp'n 22–23 (Doc. 17). The Fifth Amendment guarantees that "no person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To state a due process claim, a plaintiff must allege a deprivation of a protected interest in life, liberty, or property by the government. *See Kerry v. Din*, 576 U.S. 86, 90 (2015) (explaining that, to prevail on a due process claim, the plaintiff must establish that she has a protected liberty interest in the government providing an adequate explanation for her spouse's visa application).

Relying on the Supreme Court's recent decision in *Department of State v. Muñoz*, 602 U.S. 899 (2024), Defendants argue that Ms. Hassan's due process claim fails as a matter of law. In *Muñoz*, the plaintiff, a U.S. citizen, wished to unite with her spouse, a Salvadoran citizen, in America. 602 U.S. at 903. To that end, the couple took steps to obtain an immigrant visa for the plaintiff's husband. *Id.* at 1818. After several interviews with a consular officer in San Salvador, the officer denied the husband's application because he had tattoos that the officer believed signified membership with MS–13, an international gang. *Id.* at 904–905. The State Department did not provide such a detailed explanation to the couple when it informed them of the denial, and simply cited 8 U.S.C. § 1182(a)(3)(A)(ii), a section of the Immigration and Nationality Act ("INA") that prohibits noncitizens from entering the U.S. with the principal goal of engaging in unlawful activity. *Id.* at 905 (citing 8 U.S.C. § 1182(a)(3)(A)(ii)).

The plaintiff alleged that the State Department had "abridged [her] constitutional liberty interest in her husband's visa application by failing to give a sufficient reason why [he] is inadmissible" under the cited INA provision. *Id.* at 906; *see also id.* at 909 (explaining that the plaintiff "argue[d] that the State Department abridged her fundamental right to live with her spouse in her country of citizenship—and that it did so without affording her the fair procedure guaranteed by the Fifth Amendment"). The Ninth Circuit Court of Appeals agreed that the plaintiff had a protected liberty interest in her husband's visa application and held that the State Department failed to give the plaintiff a "facially legitimate and bona fide reason for denying her husband's visa." *Id.* at 906–907. The State Department petitioned for certiorari. *Id.* at 907.

The *Muñoz* Court observed that Ms. Muñoz had characterized her claim as one based on procedural due process and that she had a fundamental right "to *reside with her noncitizen spouse in the United States*." *Id.* at 910 (emphasis in original). The Court held "that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 1821. The Court further explained that if Ms. Muñoz had claimed that the denial of her husband's visa "violated her substantive due process right to bring her noncitizen spouse to the United States," such a claim "cannot succeed . . . because the asserted right is not a longstanding and deeply rooted tradition in this country." *Id.* at 919 (internal quotation marks omitted).

The impact of the *Muñoz* decision on Ms. Hassan's due process claim is plain: for both the substantive and procedural due process claims, *Muñoz* precludes relief because Ms. Hassan cannot identify a liberty interest protected by the Fifth Amendment. Therefore, the Defendants' motion to dismiss Ms. Hassan's due process claim is granted.

### B. Unreasonable Delay Claims

Defendants also seek to dismiss Ms. Hassan's unreasonable-delay claims. Under the APA, an agency is required to conclude a matter presented to it "within a reasonable time" and authorizes courts to "compel agency action . . . unreasonably delayed" (5 U.S.C. §§ 555(b), 706(1)), so long as those actions are not "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2) (exempting from judicial review agency actions that are committed to agency discretion by law). Federal district courts also have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.

§ 1361. A writ of mandamus may issue where "(1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006).

In an unreasonable-delay case like this, APA and Mandamus Act analyses are considered coextensive, and courts discuss them together. *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (D. Minn. 2008). ("Because in immigration-delay cases like this one, the duty to be enforced by way of mandamus is a duty of timeliness established by the APA, there is little reason to consider mandamus claims separately from claims under the APA.").

As indicated above, Defendants raise three grounds for dismissal of Plaintiff's unreasonable-delay claims. First, they argue that, where a consular officer has interviewed Mr. Hussein and "refused" his visa application, the Defendants do not owe any nondiscretionary duty to take further action. According to Defendants, placing the petition into "administrative processing" does not make the "refusal" of the visa following the consular interview a nonfinal agency action. In addition, they contend that § 555(b) of the APA does not impose any discrete duty to act with respect to the visa application in this case. Second, Defendants argue that Ms. Hassan's claims are barred by the doctrine of consular nonreviewability. And finally, Defendants argue that Plaintiff's claims fail because she does not plausibly allege that the delay in this case is unreasonable.

### 1.   Nondiscretionary Duty

According to Defendants, neither the immigration laws nor the APA impose on them a nondiscretionary obligation to take any further action on Mr. Hussein's visa

7

application. A brief discussion of the relevant immigration laws provides useful context for a discussion of Defendants' position.

A noncitizen needs a visa to enter the United States. *Muñoz*, 602 U.S. at 903 (citing 8 U.S.C. § 1181(a)); *Scialabba v. Cuellar De Osorio*, 573 U.S. 41, 46 (2014) (citing 8 U.S.C. § 1181(a)). This case concerns the application for a K-1 fiancé visa for Mr. Hussein. As one court explained:

> [A] K-1 visa permits a foreign-citizen fiancé(e) to travel to the United States and marry his or her United-States-citizen sponsor within 90 days of arrival. . . . After the wedding, the foreign citizen can then apply for permanent-resident status. To start the process, the United-States-citizen sponsor files a petition with United States Citizenship and Immigration Services, and after Citizenship and Immigration Services approves the petition, the petition goes to the Department of State's National Visa Center. The National Visa Center then sends the petition to the appropriate embassy for a consular officer to conduct a visa interview.

*Wilkes v. Blinken*, No. 4:21-CV-01148-SRC, 2022 WL 1288402, at *1 (E.D. Mo. Apr. 29, 2022) (citations omitted). The noncitizen has the burden to establish eligibility for a visa, 8 U.S.C. § 1361, and the consular officer has discretion to grant or deny a visa, 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81.

The consular officer either issues the visa or refuses to do so at the conclusion of the interview. The applicable regulation provides:

> When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 423(d), discontinue granting the visa.

22 C.F.R. § 42.81(a). However, "[i]f the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence," the consulate will retain the documentation originally filed for a year, during which time the visa applicant can try to overcome the refusal. 22 C.F.R. § 42.81(b); *id.* § 42.81(e) (providing that a case shall be reconsidered if the applicant provides further evidence tending to overcome the ground of ineligibility within a year from the date of refusal).

Defendants' position is that once a consular official refuses to issue a visa at the conclusion of a consular interview, which is what occurred after Mr. Hussein's interview here, the agency has made a final decision. According to Defendants, the fact that the agency has placed the application in "administrative processing" does not change the fact that the applicant failed to meet their burden to show that a visa should issue. Because no further agency action is required by law, there is no nondiscretionary duty to further adjudicate the petition, and the Plaintiff's claim that agency action has been unreasonably delayed fails as a matter of law. In support of this argument, Defendants rely on a recent decision from the Court of Appeals of the District of Columbia—*Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024).

In *Karimova*, the Court of Appeals of the District of Columbia Circuit found a plaintiff failed to adequately state a claim that a consular officer had a duty to act where she did not receive a visa upon the completion of her consular interview. The plaintiff, Gulshana Karimova, an Azerbaijani citizen and resident, applied for a visa to enter the

United States in October 2019, and she had an interview with a consular officer at the U.S. Embassy in Georgia in 2020. *Karimova*, 2024 WL 3517852, at *2. Following the interview, the consular "officer officially 'refused' her application," and "then placed her application in 'administrative processing in order to verify qualifications for her requested visa.'" *Id.* (brackets omitted). A year later, Ms. Karimova filed a suit in federal court alleging that the consular officer unreasonably delayed adjudication of her visa application under the APA. *Id.* The district court granted the government's motion to dismiss her APA claim, and on appeal, the D.C. Circuit affirmed the dismissal. *Id.* at *2–3. Essentially, the *Karimova* court reasoned that a federal court can only compel agency action under the APA where the agency is required by law to take some discrete action, and once the consular officer decided not to issue the visa at the conclusion of Ms. Karimova's interview, the officer no longer owed her any duty. *Id.* at *2, *3–6.

Based on *Karimova*, Defendants ask the Court to draw the conclusion that if a visa applicant (like Mr. Hussein) has had a consular interview, and his application is "refused" for "administrative processing," then there can be no claim for unreasonable delay under the APA because the State Department no longer has a legal obligation to adjudicate the petition. For several reasons, the Court will not reach that conclusion here. First, there is no Eighth Circuit precedent with the same holding as *Karimova*; nor does there appear to be any binding precedent adopting the *Karimova* court's reasoning or its interpretation of § 555(b). Instead, *Karimova* is an unpublished decision that does not control the outcome here, and this Court is not required to follow its holding or its reasoning.

10

Second, and more importantly, this Court is not persuaded on the record before it in this case that a consular officer's purported "refusal" of a visa application operates as a final agency decision that concludes the agency's legal obligation to adjudicate the application when the officer places the application in administrative processing. The *Karimova* decision does not identify a statutory provision that plainly states a consular officer's "refusal" at the conclusion of the interview concludes the agency's obligation to finally adjudicate the decision. And although the State Department's regulations state that a "consular officer must issue the visa, or refuse the visa," 22 C.F.R. § 42.81, Defendant does not point to a regulation stating that such a "refusal" constitutes the final agency action. It appears that the *Karimova* court reached that conclusion based primarily on the provisions of the State Department's Foreign Affairs Manual. *See* 2024 WL 3517852, at *1–2 & n.1 (citing provisions in the Manual).[2] However, it is far from clear whether the Foreign Affairs Manual has any legally binding effect, and *Karimova* does not illustrate how the interpretation reflected in the Manual is consistent with the language of any Act of Congress. *Cf. Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and emphasizing that courts are obligated to declare what the law is without deferring to agency's interpretations of ambiguous laws).

Moreover, even under the *Karimova* court's description, the function served by the "administrative processing" limbo into which Mr. Hussein's application has been placed

---

[2] 9 Foreign Affairs Manual, *Visas*, https://fam.state.gov/Volumes/Details/09FAM.

11

appears, practically speaking, to be that he still can overcome the "refusal" of his application through the submission of additional information to the consular officer. *See Karimova*, 2024 WL 3517852, at *2 (citing 9 Foreign Affairs Manual § 306.2-2(A)(a)). Here, both the complaint and a declaration filed by Defendants indicate that the consular officer believed "additional security screening was required" and "additional screening is ongoing." McNeil Decl. ¶¶ 7–8 (Doc. 13); Compl. ¶¶ 20–21. With respect to the *Karimova* court, this is the opposite of the agency having already "conclude[d] a matter presented to it." 5 U.S.C. § 555(b). Simply describing the decision as final does not make it so.

This conclusion is further buttressed by the results of a case status review on the State Department's website using Mr. Hussein's Immigrant Visa Case Number. The result reveals that the agency lists his application as "Refused," but it also states:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. ***You will receive another adjudication once such processing is complete***. Please be advised that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
> For more information, please visit TRAVEL.STATE.GOV.

U.S. Dep't of State, Consular Electronic Application Center, Visa Status Check, https://ceac.state.gov/ceacstattracker/status.aspx (emphasis added).[3] If the State

---

[3] With this link, an internet user who has the relevant visa case number can locate the State Department's status update.

12

Department informs an applicant that he "will receive another adjudication" when the administrative processing is complete, then the State Department is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing. *Ebrahimi v. Blinken*, No. 23 C 3867, 2024 WL 2020038, at *5 (N.D. Ill. May 3, 2024) ("As other courts have noted, the State Department's use of 'will' in this communication all but guarantees the applicant another adjudication once administrative processing is complete.") (cleaned up); *Billoo v. Baran*, No. 2:21-cv-05401-CBM-(JPRx), 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022) ("Pursuant to the Department of State's own statements and instructions on their website, the Court finds that these facts demonstrate that Mr. Ahmadzai has not received a final determination on his visa application.").

Other courts have similarly concluded that when an application is in administrative processing, there has been no final decision, and the agency still has an obligation to adjudicate the application in a timely manner. *See Jafarzadeh v. Blinken*, No. 1:23-CV-00770-KJM-CDB, 2024 WL 3937417, at *4 (E.D. Cal. Aug. 26, 2024) (declining to follow *Karimova* as inconsistent with prior caselaw and rejecting as "unpersuasive" the government's argument that a final decision had been made despite ongoing administrative processing); *Sharifi v. Blinken*, No. 1:23-CV-5112-OEM, 2024 WL 1798185, at *3 (E.D.N.Y. Apr. 25, 2024) ("Here, in refusing Mahin's visa application for further administrative processing under Section 221(g), consular officials have taken no final action: though nominally 'refused,' Mahin's visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination.");

13

*Farahani v. Laitinen*, No. 1:23-CV-922, 2024 WL 2785043, at *4 (M.D.N.C. May 30, 2024) ("Courts have held that refusals entered for administrative processing are not final, and thus that consular non-reviewability does not bar judicial review of unreasonable delay claims for such visa applications."); *see also Asresash B.T. v. Blinken*, No. 22-cv-1300 (WMW/JFD), 2023 WL 2273158, at *2 (D. Minn. Feb. 28, 2023) (noting that the doctrine of consular non-reviewability only prevents courts from reviewing final visa determinations, and that "[c]ases in administrative processing have not been finally refused"); *Osman v. Clinton*, 2012 WL 1060053, at *2 (D. Minn. Mar. 29, 2012) (finding that the doctrine of consular nonreviewability barred judicial review of agency action on a visa application where, after the motion to dismiss was briefed, the State Department "concluded the administrative processing for which [plaintiff's visa application was originally refused").

    Finally, interpreting a refusal-for-administrative-processing approach as the conclusion of the matter before the agency, when in fact it appears often to be just a step in the process has the potential to shield from judicial review unreasonable delays that are prohibited by the APA. If the approach in cases like this constitutes a final agency action, the State Department could, in effect, refuse every visa application as a matter of course, place them into the administrative processing queue, and then take far more time than is reasonable to adjudicate the petition. Nothing in the INA or the relevant implementing regulations suggests that Congress intended such a result.

### 2. Consular Nonreviewability

Defendants next argue that the doctrine of consular nonreviewability bars consideration of Ms. Hassan's claims. Under the doctrine of consular nonreviewability, "Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference." *Muñoz*, 602 U.S. at 907 (quotations omitted). When such a delegation has occurred, the executive officer's decision whether to admit or exclude a noncitizen "is final and conclusive." *Id.* (quotation omitted). Courts do not play a role in these decision except where "expressly authorized by law." Id. at 908 (quotation omitted). Under this doctrine, "federal courts cannot review" a "consular officer's denial of a visa." *Id.*; *see also Asresash B.T.*, 2023 WL 2273158, at *2 (D. Minn. Feb. 28, 2023) (discussing doctrine of consular nonreviewability). "[T]he doctrine of consular nonreviewability is not jurisdictional." *Muñoz*, 144 at 1820 n.4.

Defendants argue that the consular doctrine of nonreviewability bars consideration of Plaintiff's claims in this case because her claims ask the State Department to change its decision to refuse Mr. Hussein's visa. They characterize her request for relief as asking the Court to "compel consular officers to revisit the ultimate question on the existing records, which a consular officer has already found to be inadequate to support issuing the visa." Defs.' Mem. 16 (Doc. 12). The Court disagrees. The doctrine of consular nonreviewability does not require the Court to find Ms. Hassan's unreasonable-delay claims fail as a matter of law. Defendants' argument rests on the flawed premise that Mr. Hussein's visa application has been finally resolved and Ms. Hassan seeks to overturn that decision or have the Court order reconsideration of it. But the Court rejects that premise of finality—

the matter before the agency has not been concluded because the application remains in administrative processing and the State Department has indicated that the application is awaiting a final adjudication. *Asresash B.T.*, 2023 WL 2273158, at *2 ("[T]he doctrine of consular non-reviewability precludes review only of 'final visa determinations' and 'does not apply to challenges regarding decisions that are not yet final.'") (quoting *Sawareh v. U.S. Dep't of State*, No. 22-1456 (JEB), 2022 WL 4365746, at *3 (D.D.C. Sept. 21, 2022)). Ms. Hassan is not challenging the outcome, but only the delay.

Accordingly, the Defendants' motion to dismiss Plaintiff's unreasonable-delay claims based on the doctrine of consular reviewability is denied.

### 3. Plausibility of Unreasonable Delay

Finally, Defendants argue that on the face of the complaint, Plaintiff fails to state a claim of unreasonable delay. In evaluating whether an agency has unreasonably delayed making a final decision on a plaintiff's application, courts frequently apply a multi-factor test established in *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). Defendants argue that Ms. Hassan fails to state a plausible unreasonable-delay claim based on application of the *TRAC* factors. The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also consider the nature and extent of the interests prejudiced by the delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80; *Rambang v. Mayorkas*, No. 11-cv-3454 (JRT/JJK), 2012 WL 2449927, at *5–6 (quoting *TRAC*, 750 F.2d at 80).

Defendants argue that application of the *TRAC* factors to facts alleged in the complaint demonstrates that any alleged delay in this case is not unreasonable as a matter of law. Defs.' Mem. at 15–21. Having reviewed the complaint and the entire record in this case, the Court concludes that it cannot resolve the question of whether the delay alleged is unreasonable as a matter of law at the motion-to-dismiss stage. While it is true that some courts have found unreasonable-delay claims capable of resolution based on the TRAC factors on a Rule 12(b)(6) motion, *e.g.*, *Oduor v. Blinken*, No. 1:23-cv-00908, 2024 WL 1406548, at *3–5 (D.D.C. Mar. 29, 2024), here, the Court finds that the determination of the merits of the unreasonable-delay claim would be premature without the benefit of a more fully developed record.

As other courts have observed, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, ,336 F.3d 1094, 1100 (D.C. Cir. 2003)). Here, Mr. Hussein's interview took place

in March 2023. Defendants point to no binding authority establishing that a delay of twenty months can never, as a matter of law, constitute unreasonable delay. And the Court cannot resolve, on this limited record, whether the twenty-month delay is attributable to a "rule of reason." There is no information in the record about what principles, if any, Defendants apply in determining how quickly or slowly to adjudicate a visa application like Mr. Hussein's. The Court also is not able to assess, on this record, how to balance the "nature and extent of the interests prejudiced by the delay," or the "effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The final determination of such issues should await a more fully developed record. *See Sawad v. Frazier*, No. 07-cv-1721, 2007 WL 2973833, at *5 (D. Minn. Oct. 9, 2007) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of a particular case.") (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)); *Feng v. Beers*, No. 2:13-cv-2396 (JAM/DAD), 2014 WL 1028371, at *8 (E.D. Cal. Mar. 14, 2014) (declining to dismiss based on application of *TRAC* factors at the motion to dismiss stage because the record was insufficiently developed); *Rodriguez v. Nielsen*, No. 16-cv-7092 (MKB), 2018 WL 4783977, at *21 (E.D.N.Y. Sept. 30, 2018) ("The Court has insufficient information upon which to identify the source of delay, the agency's allocation of its resources, and the extent to which Defendants may have participated in delaying the proceedings.") (quotations omitted).

Accordingly, Defendants' motion to dismiss Ms. Hassan's unreasonable-delay claim is denied to the extent it relies on application of the *TRAC* factors.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART** as follows. Plaintiff's due process claim in her Third Cause of Action is dismissed. The motion is otherwise denied.

Date: December 4, 2024         *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States District Judge